IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-cv-00102-MR

| | |
|---|---|
| RONALD MCCLARY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MARTA KALINSKI, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendants' Motions for Summary Judgment [Docs. 65, 71]. Also pending is Plaintiff's Motion for Leave to File Surreply [Doc. 79].

**I.     BACKGROUND**

The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. The Complaint [Doc. 1] addresses incidents that allegedly occurred at the Alexander Correctional Institution. The Defendants are: Marta Kalinski, M.D., the former North Carolina Department of Public Safety (NCDPS) Medical Director for health Services at Alexander C.I.; Christina M. Fox, a nurse supervisor at Alexander C.I.; and Cassandra S. Lor, a former clinical dietician at Alexander C.I.

In the verified Complaint, Plaintiff alleges that the Defendants approved him for a nutritionally inadequate Nutraloaf[1] diet in May 2018, deprived him of two prescribed bladder and prostate medications during May 2018, and ignored his sick call requests for a seven-week period. As injury, Plaintiff alleges that he experienced stomach pain, weight loss, and increased urination. Plaintiff seeks compensatory and punitive damages. The Complaint passed initial review on Plaintiff's claims that Defendants deprived him of a medically sufficient diet and adequate medical care.[2] [Doc. 10].

Defendant Kalinski filed a Motion for Summary Judgment [Doc. 65], arguing that: Plaintiff has not present a forecast of evidence that Plaintiff had a serious medical need to which Defendant Kalinski was deliberately indifferent or that Plaintiff suffered any adverse medical impacts; the claims against Defendant Kalinski in her official capacity are barred by sovereign immunity; Defendant Kalinski is entitled to qualified immunity on the claims against her in her individual capacity; and Plaintiff has failed to demonstrate that he exhausted his administrative remedies.

---

[1] Defendant Kalinski states that "Nutraloaf is a blend of fruit, dairy, vegetable, grains, and proteins that is baked and served to inmates with a glass of milk." [Doc. 67-1 at 2].

[2] This case was assigned to Judge Frank D. Whitney at that time.

Defendants Fox and Lor filed a Motion for Summary Judgment [Doc. 71] adopting Defendant Kalinski's arguments in support of summary judgment. Defendants Fox and Lor additionally argue that they were not involved in the initial assessment regarding the safety of placing Plaintiff on a special management meal plan and that they responded reasonably when Plaintiff complained about his placement on the Nutraloaf diet.

Plaintiff was informed of the legal standard that applies to summary judgment motions and of the importance of filing a persuasive response to Defendants' Motions. [Doc. 74]. Plaintiff filed an unverified Response to each of the Motions for Summary Judgment. [Docs. 76, 77]. He makes a number of arguments including that: "custody" was allowed to interfere with Plaintiff's medical diet and have him placed on Nutraloaf for unjustified punitive reasons [Doc. 76 at 2]; Defendants Lor and Fox's assertions that they were not involved in assessing Plaintiff for Nutraloaf are lies; Plaintiff's placement on Nutraloaf and lack of monitoring during the seven-day diet were deliberately indifferent and failed to comply with prison policy; Plaintiff's refusal of medication during the Nutraloaf diet was due to the lack of an evening snack bag;[3] Plaintiff "missed many self-meds late given," and

---

[3] Plaintiff alleges that he takes Naproxen for degeneration of a disc in his back and for shoulder pain resulting from a use of force incident. He asserts that taking Naproxen on

3

Plaintiff's requests for medical attention were ignored. [Doc. 76 at 6]. Plaintiff further alleges that Defendant Fox refused to renew his approval for an extra mattress. [Doc. 77 at 8].

Defendant Kalinski filed a Reply[4] arguing that Plaintiff's failure to exhaust his administrative remedies bars his claims as a matter of law. Defendant Kalinski further alleges that Plaintiff has failed to forecast evidence establishing a genuine issue for trial with regards to deliberate indifference. She argues that there is no evidence that Plaintiff faced a substantial risk of serious harm and/or a serious medical need during his incarceration at Alexander. Specifically, she argues that Plaintiff has failed to demonstrate that the Nutraloaf diet adversely affected him or that a violation of prison policy occurred; there is no evidence Defendant Kalinski knew about the alleged stomach pain, prostate or bladder problems, or that any stomach pain was severe enough to mandate treatment; Plaintiff was offered treatment on several occasions which he refused; and that Plaintiff's complaints about back pain are new and therefore should not be considered and fail to support a deliberate indifference claim. Plaintiff has thus failed to

---

an empty stomach causes pain and that lack of the medication leaves his back and shoulder pain untreated.

[4] Defendants Fox and Lor did not reply.

4

establish a risk of substantial harm or serious medical need and, even if he had done so, he has failed to establish that Defendant Kalinski had subjective knowledge of such a condition and consciously failed to treat it.

Plaintiff has filed a Motion seeking leave to file a Surreply. [Doc. 79]. He argues that he exhausted his administrative remedies and that he is unable to provide further records, which are available to Defendants, because Plaintiff's property was destroyed at another institution. Plaintiff argues that Defendant Kalinski, who was responsible for all medical staff, should have seen Plaintiff face-to-face because he was on a special diet but failed to do so and has also failed to show that she ever reviewed his medical records or provide adequate care. Plaintiff argues that he properly raised the claim about back pain because a plaintiff is not limited on the number of claims that can be raised and that his pleadings should be liberally construed. Plaintiff further argues that he was not required to submit sick call requests because Defendants were aware that his medications had to be taken with food, and that he suffers from conditions that were exacerbated by taking medication on an empty stomach.

Plaintiff's Motion seeking leave to file a Surreply will be granted insofar as the Court has considered Plaintiff's additional arguments.

5

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). To withstand a motion for summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. Dash v. Mayweather, 731 F.3d 303, 311, (4th Cir. 2013).

## III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is

6

Case 5:18-cv-00102-MR   Document 81   Filed 11/12/20   Page 6 of 20

mandatory. Id. at 524 (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Defendant Kalinski argues that Plaintiff failed to prove that he properly exhausted his administrative remedies. [Doc. 66 at 14; Doc. 78 at 2]. However, lack of exhaustion under the PLRA is an affirmative defense for which Defendants have the burden of proof. See Jones, 549 U.S. at 216 ("failure to exhaust is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017) ("failure-to-exhaust is an affirmative defense that the defendant must raise"); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[I]nmates need not plead exhaustion, nor do they bear the burden of proving it."). Defendant Kalinski's arguments that Plaintiff failed to come forward with evidence proving that he properly exhausted his administrative remedies attempts to

shift the burden to Plaintiff and is rejected.[5] Defendant Kalinski has failed to satisfy the burden of demonstrating that Plaintiff failed to exhaust his administrative remedies, and therefore, her Motion for Summary Judgment on that basis will be denied.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). To establish a violation of the Eighth Amendment, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 8–9 (1992); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). To demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must "produce evidence of a serious or significant physical or emotional injury resulting from

---

[5] Plaintiff alleges that his records are incomplete because all his property was destroyed at another institution. [Doc. 77 at 3].

8

the challenged conditions," Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993), or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions, see Helling v.McKinney, 509 U.S. 25, 35 (1993).

It is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well-being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted). However, there is no constitutional guarantee that prison conditions, including food, will be pleasant. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (the Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones.") (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); Meyers v. Clarke, 767 F. App'x 437 (4th Cir. 2019) (plaintiff's allegation that he was served stale and moldy honey buns did not qualify as the deprivation of a basic human need and was frivolous). Several courts have concluded that serving an inmate a Nutraloaf diet does not constitute cruel and unusual punishment. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (concluding that use of Nutraloaf diet for seven days did not violate inmate's Eighth Amendment rights); Gates v. Huibregtse, 69 F. App'x 326, 327 (7th Cir. 2003)

9

(finding inmate's claim that placement on Nutraloaf was cruel and unusual punishment was frivolous because, while food served in prison must be nutritious, it does not have to be delicious or appetizing).

First, Plaintiff alleges that Defendants were deliberately indifferent for approving him for a Nutraloaf diet because Defendants knew that the Nutraloaf diet would harm his health due to several chronic health conditions, his longstanding receipt of a high-calorie medical diet, and his underweight condition before the diet began.

Defendants Fox and Lor have filed sworn Declarations stating that they did not have any role in approving Plaintiff for placement on the Nutraloaf diet. [Doc. 73-1 at 2; Doc. 73-2 at 2-3]. Plaintiff has not come forward with any forecast of evidence, other than his unverified allegation that these Defendants' declarations are untruthful, or to demonstrate that Defendants Fox and Lor were involved in the diet's approval. Defendant Fox admits that, on May 18, 2018, she received a letter from Plaintiff complaining about Nutraloaf because he was supposed to receive a therapeutic diet. As nurse supervisor, Defendant Fox believed it was appropriate to investigate whether it was acceptable for Plaintiff to receive Nutraloaf notwithstanding his therapeutic diet. Defendant Fox asked Defendant Lor to determine the calories in Nutraloaf, which Defendant Lor did by consulting with a nutritionist

10

in Raleigh, then conveyed the information to Defendant Fox. [Doc. 73-1 at 3; 73-2 at 3]. This was the extent of Defendant Lor's involvement with Plaintiff's care. [Doc. 73-2 at 3]. It was determined that Nutraloaf and milk contains 2,760 calories which, in Defendant Fox's opinion, is sufficient for an inmate. [Doc. 73-1 at 3]. Defendant Fox discussed this information with Defendant Kalinski, and Defendant Kalinski determined that the special management diet was appropriate even though Plaintiff otherwise received a therapeutic diet. [Doc. 73-1 at 1; Doc. 67-1 at 2].

Defendant Kalinski admits that she approved Plaintiff for the Nutraloaf diet after consulting with nursing care providers during May 2018 to ensure that doing so was medically safe. [Doc. 67-1 at 2]. Defendant Kalinski states that the Nutraloaf diet is "nutritionally adequate and provides approximately 3,000 calories per day," and that she approved Plaintiff for a Nutraloaf diet "because there was no medical reason that [he] could not be safely placed on a Nutraloaf diet [and he] suffered no adverse medical impacts as a result of being placed on a Nutraloaf diet." [Id.]. Plaintiff has failed to forecast any evidence that Defendants knew of, and disregarded, a serious risk to his health with regards to his placement on the Nutraloaf diet.

Further, Plaintiff has not presented any forecast of evidence to demonstrate that the seven-day Nutraloaf diet exposed him to a substantial

11

risk of harm or that he was, in fact, harmed by such diet. Plaintiff contends that he had lost weight at Alexander C.I. and was underweight before he was placed on the Nutraloaf diet; that he lost additional weight on the diet; and that he is unable to gain weight. Medical records confirm that Plaintiff had lost seven pounds before Nutraloaf began. However, Defendants have submitted a forecast of evidence indicating that Plaintiff, who is six feet tall, weighed 165 pounds when he began Nutraloaf, and that he weighed 165 pounds when he was transferred to another facility in August 2018.[6] [Doc. 68 at 30]. Plaintiff has failed to come forward with any forecast of evidence that consuming Nutraloaf for seven days caused, or placed him at risk of, any significant harm. See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (finding that plaintiff did not state an Eighth Amendment claim based on his dietary restrictions for high blood pressure and being fed Nutraloaf and water for 20 days during isolation because he failed to assert any imminent health risks, deliberate indifference to a serious medical need, or gross incompetence); Tyler v. Lassiter, No. 5:13-CT-3139-FL, 2016 WL 866325, at *5 (E.D.N.C. Mar. 3, 2016) (granting summary judgment for

---

[6] The Court takes judicial notice that, at six feet tall and 165 pounds, Plaintiff had a body mass index of 22.4, which the National Institutes of Health classifies as falling within the normal range for adults. See https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm; Fed. R. Ev. 201 (addressing judicial notice); see, e.g., United States v. Garcia, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

defendants where the plaintiff was served Nutraloaf for seven days and plaintiff did not establish evidence of significant injury).

With regard to the alleged lack of medical monitoring during the diet, Defendants have come forward with a forecast of evidence—which Plaintiff has failed to reubt—that Plaintiff's vital signs and weight were checked the day he was approved for Nutraloaf and that Plaintiff refused to have his vital signs checked the next day and on several subsequent occasions. [Doc. 68 at 145, 148-49, 151]. Defendants cannot be deemed deliberately indifferent for failing to conduct monitoring that Plaintiff refused. Moreover, to the extent that Plaintiff alleges that his approval for Nutraloaf and monitoring during the seven-day diet did not accord with prison policy, any failure to comply with that policy, by itself, does not demonstrate that an Eighth Amendment violation occurred. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) ("prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation."); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy [a prisoner] must prove that [the defendant] violated his constitutional right[s]….").

Next, Plaintiff alleges that Defendants were deliberately indifferent for failing to adequately address the stomach pain he experienced during the

13

Nutraloaf diet. Plaintiff submitted a sick call request dated May 16, 2018 stating "having bad stomach pains." [Doc. 1-1 at 13]. The handwritten response from "Medical Dept" states that the request was not on a valid form and Plaintiff was instructed to request the correct form from "custody." [Id.]. However, Plaintiff has failed to forecast any evidence demonstrating that he complied with this directive. Thus, Plaintiff has failed to forecast any evidence that his alleged stomach pain was severe enough to rise to the level of a serious medical need, that any Defendant's action or inaction caused his pain, or that any Defendant knew of his alleged pain and deliberately refused him treatment. Therefore, Defendants will be granted summary judgment on this allegation.

Plaintiff further alleges that he was unable to take Naproxen for pain during the seven-day Nutraloaf diet because that medication must be taken with food. In support of this allegation, Plaintiff has submitted a Medication Administration Record (MAR) for August 2016—nearly two years before the relevant time period—stating that Plaintiff's Naproxen 500 mg must be taken with a full meal. [Doc. 1-1 at 12]. Defendants have filed an MAR for the relevant time period of May 2018 for Naproxen 500 mg which contains no such notation. [Doc. 69 at 145]. Further, the May 2018 MAR reflects that Plaintiff began refusing Naproxen and other medications on May 4, before

14

the Nutraloaf diet commenced, and that he refused medications including Naproxen on several occasions after the Nutraloaf diet ended on May 21. [Doc. 69 at 143-45]. Plaintiff has failed to present any forecast of evidence that his refusal of Naproxen during the seven-day Nutraloaf diet resulted in pain that was severe enough to rise to an Eighth Amendment level, that his refusal of Naproxen was attributable to any Defendant, or that any Defendant knew of and deliberately ignored any resulting risk to Plaintiff's health. Therefore, Defendants will be granted summary judgment on this issue.

Plaintiff appears to allege that the seven days he spent on the Nutraloaf diet exacerbated his bladder condition. In support of this claim, he has submitted evidence of a May 16, 2018 sick call form stating "[t]here is blood in my urine." [Doc. 1-1 at 13]. Defendant Lor, a clinical dietician, filed a sworn Declaration stating that Plaintiff never filled out a sick call request seeking to consult with her and that she never saw Plaintiff as a patient. [Doc. 73-2 at 3]. Plaintiff has failed to rebut Defendant Lor's Declaration. Additionally, Defendant Kalinski filed a sworn Declaration stating that she was never asked to evaluate or treat Plaintiff for his bladder, prostate, or any other medical condition, never provided him with any other medical care in the summer of 2018, has "no personal knowledge of [Plaintiff's] alleged bladder or prostate issues," and "received no notification that Mr. McClary

15

was complaining of bladder or prostate issues." [Doc. 67-1 at 3]. Plaintiff has failed to rebut Defendant Kalinski's sworn statement but merely states in his unverified summary judgment Response that "ample records will be offered" showing that Defendant Kalinski knew about his bladder and prostate issues. [Doc. 76 at 5]. Defendant Fox admits that she received some letters from Plaintiff about a number of medical complaints which she attempted to discuss with him at his cell. [Doc. 73-1 at 3]; [Doc. 68 at 153 (May 31, 2018 Clinical Encounter Administrative Note addressing issues at Plaintiff's prior prison, Maury C.I., the Nutraloaf diet, and Hytrin medication which Plaintiff received on May 3, 2018 for self-administration)]. This forecast of evidence demonstrates that the meeting between Defendant Fox and Plaintiff ended when Plaintiff became threatening and that Defendant Fox reminded Plaintiff that he would need to submit a sick call, submit an inmate request form, or use the grievance process to resolve his concerns. [Id.]. Plaintiff does not attempt to rebut this evidence other than by stating in his unverified Response that Defendant Fox's May 31 Clinical Encounter note is "self-serving," that Defendants have failed to file Plaintiff's letters, and that Plaintiff was never written up for threatening Defendant Fox. [Doc. 77 at 7]. Further, Defendants have submitted evidence demonstrating that Plaintiff was scheduled for a pelvic ultrasound to investigate his bladder

16

complaint, and that Plaintiff declined that appointment on June 18, 2018. [Doc. 68 at 156]. Plaintiff has failed to present a forecast of evidence demonstrating that any of the Defendants knew that he was suffering from a serious bladder condition to which they were deliberately indifferent. Therefore, summary judgment for Defendants will be granted on this claim.

Plaintiff complains that Defendant Fox, as nurse supervisor, is responsible for the fact that he missed a total of 90 pills—60 Terazosin (Hytrin) for a bladder problem and 30 Flomax (Tamsulosin) for an enlarged prostate—during May 2018. [See Doc. 1 at 5]. In response to this claim, Defendants have submitted medical records indicating that Plaintiff received 60 Terazosin pills on May 3, 2018 and a 30-day supply of Flomax on May 29, 2018 for self-administration. [Doc. 69 at 144 (Medical Administration Record (MAR) noting 60 "KOP" at 15:11 on May 3, 2018); Doc. 68 at 155 (Clinical Encounter Administrative Note by Pamela J. Cox, RN stating that a 30-day supply of Flomax was sent on May 29, 2018)]. These medical records also demonstrate that Plaintiff filed an Inmate Request on June 1, 2018, complaining about the lack of Flomax and that he was dispensed 30 Flomax pills for self-administration that same day. [Doc. 69 at 150 (noting 30 Tamsulosin "KOP" at 19:56)]. Plaintiff has failed to present a forecast of evidence demonstrating that any Defendant was aware of, deliberately

17

withheld, or inadequately responded to any complaint about these medications. Plaintiff's attempt to assert supervisory liability against Nurse Fox is unavailing because Plaintiff has failed to present any forecast of evidence that Defendant Fox knew of a pervasive risk of constitutional injury and displayed deliberate indifference to, or tacitly authorized, any allegedly wrongful conduct by her subordinates. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (a supervisor can be liable where (1) she knew that her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) her response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between her inaction and the constitutional injury.") (internal quotation marks omitted). In sum, Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact that any Defendant was deliberately indifferent to the allegedly missing medication. Therefore, Defendants will be granted summary judgment on this claim.

Finally, in his Response to the Defendants' motions for summary judgment, Plaintiff attempts to raise a new deliberate indifference claim based on the denial of an extra mattress. [Doc. 77]. "[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."

18

Case 5:18-cv-00102-MR   Document 81   Filed 11/12/20   Page 18 of 20

Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599 (4th Cir. 2009). Plaintiff will not be permitted to amend his Complaint to add a new claim in a summary judgment Response, and therefore, the mattress claim is subject to dismissal on that basis alone. Id. (refusing to consider plaintiff's claim of malicious prosecution that was raised for the first time in his summary judgment response); see Fed. R. Civ. P. 15(a) (addressing the amendment of complaints). Even if this claim were properly before the Court, summary judgment would be entered in favor of Defendants because they have submitted a forecast of evidence that the extra mattress was denied by individuals other than the named Defendants. [See Doc. 68 at 159-64]. Plaintiff has failed to rebut the Defendants' forecast of evidence in this regard. For all of these reasons, Defendants will be granted summary judgment on this claim.

In summary, Plaintiff has failed to demonstrate that a genuine dispute of material fact exists for trial, and therefore, Defendants' Motions for Summary Judgment will be granted.[7]

---

[7] In light of the Court's conclusion that the forecast of evidence presented fails to demonstrate a constitutional violation, the Court need not address the Defendants' assertions of the defenses of qualified immunity and sovereign immunity.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motions for Summary Judgment [Docs. 65, 71] and grant Plaintiff's Motion for Leave to File Surreply [Doc. 79].

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Leave to File Surreply [Doc. 79] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment [Docs. 65, 71] are **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED.**

Signed: November 11, 2020

Martin Reidinger
Chief United States District Judge